UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES GAGNON<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A., SETERUS, INC., PIERCE & ASSOCIATES, P.C., EQUIFAX INFORMATION SERVICES, LLC. and EXPERIAN INFORMATION SOLUTIONS, INC.<br><br>Defendants. | Case No. 1:15-cv-09526<br><br>Honorable Robert M. Dow, Jr. |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

NOW COMES the Plaintiff, CHARLES GAGNON ("Plaintiff"), by and through his attorneys, SULAIMAN LAW GROUP, LTD., and in response to Defendant SETERUS, INC.'s ("Seterus" or "Defendant") Motion to Dismiss Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), stating as follows:

**BACKGROUND**

Plaintiff filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Illinois on July 31, 2013. (Am. Cmplt. ¶ 18.) Under his Chapter 13 Plan, Plaintiff surrendered property securing a debt owed to JPMorgan Chase Bank, N.A. ("Chase"), "in full satisfaction" of the debt. *Id.* at ¶ 22. Plaintiff's Chapter 13 plan was confirmed on October 11, 2013 *Id.* at ¶ 24. In addition to receiving all bankruptcy notices sent by the BNC by virtue of being listed as a creditor, Chase actively participated in Plaintiff's bankruptcy case. *Id.* at ¶ 25. On July 16, 2014 Chase attempted to collect the subject debt from Plaintiff. (Id. ¶ 28.)

Plaintiff obtained an Order of Discharge on August 4, 2014. *Id.* at ¶ 30. Among the debts discharged was the debt owed to Chase. *Id*. Defendant Seterus, Inc. began servicing the Chase mortgage on September 1, 2014, after Plaintiff's bankruptcy. (Id. ¶ 34.) Plaintiff's bankruptcy case closed on September 17, 2014. *Id.* at ¶ 36. Plaintiff's personal liability on the subject debt was extinguished by his bankruptcy discharge, thus terminating the business relationship with Chase and its successors in interest, including Seterus. (Id. ¶ 37.) Beginning in September 2014, and continuing through January 2015, Seterus sent Plaintiff various demands for payment on the subject debt. (Id. ¶¶ 39 - 41.)

After his bankruptcy discharge, Plaintiff discovered the subject debt was reporting inaccurately with the major credit reporting agencies. Plaintiff disputed the information by written letters to the credit reporting agencies dated August 4, 2015. (Id. ¶¶ 46, 56.) Plaintiff received Experian's reinvestigation report, dated August 17, 2015, which continued to list the inaccurate account history for the subject debt. (Id. ¶¶ 60 - 65.) Plaintiff received Equifax's reinvestigation report, dated August 23, 2015, which continued to list the inaccurate scheduled payment for the subject debt. (Id. ¶¶ 50 - 55.) Based on the investigation responses, Plaintiff discovered that Chase and Seterus had accessed Plaintiff's consumer credit file after his bankruptcy discharge and without any permissible purpose. (Id. ¶¶ 66 - 68.)

## STANDARD OF REVIEW

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In general, when a plaintiff brings a claim in federal court, he need only provide enough detail to give the defendant fair notice of what the claim is and the grounds upon

which it rests, and through his allegations show that it is plausible, rather than merely speculative, that he is entitled to relief. *Lang v. TCF Nat'l Bank,* 249 Fed. Appx. 464, 466 (7th Cir. 2007). In ruling on a pending motion to dismiss, the court must construe the allegations in the complaint in a light most favorable to the plaintiff, accept as true all well-pleaded factual allegations set forth therein, and draw all reasonable inferences in favor of the non-moving party. *Fednav Int'l Ltd. v. Continental Ins. Co.,* 624 F.3d 834, 837 (7th Cir. 2010). In the event the court finds that dismissal is warranted, the court should grant the plaintiff leave to amend unless amendment would be futile. *Ford v. Neese*, 119 F.3d 560, 563 (7th Cir. 1997).

**ARGUMENT**

I.  **Plaintiff has Adequately Plead Violations of the FDCPA**

   A.  **Effect of Plaintiff's Bankruptcy**

Seterus argues that Plaintiff's surrender of the collateral does not satisfy his obligations under the mortgage lien. Seterus misses the crux of Plaintiff's allegations against it. Plaintiff never alleges that any obligation to Seterus was extinguished upon his "surrender" of the collateral. Instead, Plaintiff alleges that Seterus was precluded from attempting to collect the subject debt from Plaintiff *personally* after the Bankruptcy Court granted him a discharge. Pursuant to 11 U.S.C. §524, a discharge "operates as an injunction against the commencement or continuation of any action, the employment of process, or an act, to collect, recover or offset any such debt" that is discharged.

Here, Plaintiff's confirmed Chapter 13 Plan proposed to "surrender" the subject collateral to Seterus' predecessor in full satisfaction of its claims. (Am. Compl. ¶22.) Once Plaintiff's Chapter 13 Plan was confirmed by the Bankruptcy Court, the terms of the confirmed Plan bound "the debtor and each creditor, whether or not the claim of such creditor is provided for by the

plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. §1327. Here, the terms of Plaintiff's Chapter 13 Plan bound Seterus to its express terms, which surrendered the subject collateral to Seterus' predecessor in full satisfaction of its claims. Neither Seterus nor its predecessor objected to their treatment under Plaintiff's confirmed Chapter 13 Plan. Once the Plaintiff completed his payments pursuant to his confirmed Chapter 13 Plan, he was granted a "discharge of all debts provided for by the plan." 11 U.S.C. §1328(a). As such, Plaintiff's personal liability on the subject debt was discharged, precluding any collection activity from the Plaintiff *personally*.

In this case, Plaintiff alleges that Seterus' dunning letters were attempts to collect a discharged debt from him personally, not as a *in rem* action against the underlying collateral. *See Johnson v. Home State Bank,* 501 U.S. 78, 84 (1991) (holding that a bankruptcy discharge extinguishes a debtor's personal liability; leaving a secured creditor with an *in rem* remedy only); *see also In re Ryan,* 100 B.R. 411, 415-16 (Bankr. N.D. Ill. 1989) (holding that the fact the debtor retains title until the mortgagee forecloses does not expose the debtor to liability for the mortgage payments; thus even if the mortgagee sat on its rights and did not foreclose on its lien, it could not hold the debtor liable for post-petition mortgage payments).

Seterus cites to *In re Zair,* 535 B.R. 15, 22 (Bankr. E.D. N.Y. 2015) to advance its argument that Plaintiff's obligations under the mortgage are not satisfied by "mere surrender of the collateral property." (Def. Mot. pg. 5). In *Zair,* the debtor proposed to surrender and vest title to a property back to the mortgagee in full satisfaction of its secured claim. The mortgagee objected to the treatment and argued that a debtor cannot surrender and vest property to it without its consent. The *Zair* court held the debtor may indeed surrender and vest title to a property in the mortgagee's name and that the mortgagee may file a claim against the debtor for

4

any deficiency arising from the difference between the value of the property and the mortgagee's claim. *Id*. at 25. Here, Seterus' predecessor did not object to Plaintiff's surrender of the subject collateral in full satisfaction of its claim. More importantly, the Plaintiff here has already secured a discharge, unlike the debtor in *Zair*. As such, Seterus' reliance on *Zair* misses the mark by a wide margin.

Seterus argues that Plaintiff's obligations under the mortgage lien continue notwithstanding his discharge because he did not "complete" the surrender of the collateral. Seterus does not cite to any authority to support its position that a debtor's personal obligation on a mortgage continues in the event that a surrender is not completed. In fact, Seterus' position flies in the face of the express language of §524 of the Bankruptcy Code which enjoins collection of a debt after discharge from the debtor personally. *See* 11 U.S.C. §524(a). Moreover, the term "surrender" in a bankruptcy context does not require physical delivery of the collateral if such delivery is unfeasible. *In re Ware,* 533 B.R. 701, 712 (Bankr. N.D. Ill. 2015). Moreover, in *In re Metzler,* 530 B.R. 894, 899 (Bank. M.D. Fla. 2015), the court held that a debtor need not deliver the collateral when he elects to surrender the collateral, and that "surrender" merely requires that a debtor to make the collateral available to the secured creditor. *Id*. The *Metzler* court further noted that requiring a debtor to deliver property to the secured creditor could circumvent state law by allowing the secured creditor to bypass the foreclosure requirement. *Id*.

Here, Seterus seems to argue that Plaintiff's surrender is ineffective because the Plaintiff is still on title to the collateral. However, Plaintiff cannot forcefully or unilaterally transfer title to the mortgagee without its consent. Moreover, "surrender" in the bankruptcy context does not require actual delivery of the collateral as Seterus suggests. Lastly, Seterus' argument that Plaintiff's surrender of the subject collateral was insufficient is nothing more than an

5

impermissible attack on Plaintiff's confirmed Chapter 13 Plan and thus must fail. *Adair v. Sherman,* 230 F.3d 890, 894-895 (7th Cir. 2000) (the law is well settled that a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation). Had Seterus or its predecessor wanted to object to their treatment under the Chapter 13 Plan, they could have done so. They did not. As a result, they are bound by the terms of the Plan and the discharge order. Plaintiff complied with the terms of the Plan and received his discharge. His personal liability on the underlying loan has been extinguished and thus all collection efforts aimed at the Plaintiff must cease pursuant to 11 U.S.C. §524.

As for Plaintiff's 1692c claim, whether Seterus had knowledge of Plaintiff's representation by counsel turns to a factual argument that is inappropriate for a Rule 12(b)(6) motion to dismiss. Plaintiff has pled Pierce knew, or should have known that he was represented by counsel with regards to the subject debt (Am. Cmplt. ¶ 18.) and the court must construe the allegation of damages in light most favorable to the Plaintiff, accept as true all well-pleaded factual allegations set forth therein, and draw all reasonable inferences in favor of the Plaintiff. See Fednav Int'l Ltd., 624 F.3d at 837 (7th Cir. 2010).

### B. Seterus' Attempts to Collect Discharged Debt

Seterus argues that because some of its communications were "disclosures," those communications cannot possibly be an attempt to collect a debt. However, the cases upon which it relies cut against its position. For example in *Gburek v. Litton Loan Servicing, LP*, 614 F.3d 380 (7th Cir. 2010), the court noted that the "nature of the parties' relationship" is a relevant factor in determining whether a communication is an attempt to collect a debt under the FDCPA. *Gburek*, 614 F.3d at 385. Moreover, *Gburek* supports the position, noted above, that "whether a communication was sent in connection with an attempt to collect a debt is a question of objective

fact, to be proven like any other fact." *Id*. at 386 (internal quotations and citations omitted). In order to survive a Rule 12(b)(6) motion to dismiss, Plaintiff only needs to make allegations, including the content of the letters attached to the complaint, that are sufficient to bring the claim within the FDCPA's scope. *Id*. In *Gburek*, the court found that a letter offered to discuss foreclosure alternatives "qualifies as a communication in connection with an attempt to collect a debt." *Id*. Even a letter simply urging the plaintiff to contact the debt collector to discuss debt-settlement options was deemed to be an attempt to collect a debt within the scope of the FDCPA. *Id*.

Seterus' communications, which were made after Plaintiff's personal liability on the underlying debt was discharged also fall within this scope. The default notice attached to Plaintiff's Amended Complaint as Exhibit J "demands" a payment of $15,002.71 from Plaintiff by October 2015. (Am. Compl. Exhibit J.) It also states, "the status of your loan may be reported to credit reporting agencies." *Id*. While none of the communications include a payment coupon, the *Gburek* court found that "it was a mistake to dismiss the complaint on the sole ground that none of these communications explicitly demanded payment from Gburek." *Id*. at 386-87. Even if, as Seterus claims, these communications were all intended to be informational, they must be considered as a whole, not individual parts. Given that Plaintiff's personal obligation on the underlying loan had been discharged, any communications regarding payment were attempts to collect a debt that misrepresented that debt's status. Such allegations are sufficient to state a claim under 15 U.S.C. §1692e(2).

Seterus also argues that its letters were not attempts to collect a debt because of its bankruptcy disclaimer appearing on bottom of the page. (Def. Mot. pg. 10). Seterus' argument must fall flat because the totality of circumstances demonstrate that the only purpose the

statements served was to collect money from the Plaintiff, as evidenced by the demands for payment and the inclusion of payment coupons on its letters. The statements are inherently misleading as they attempt to collect a debt that is not legally owed. Courts across the country have rejected the very same argument Seterus advances here to negate the conspicuous demands for payment on a discharged debt by pointing to the boilerplate disclaimer on its letters. Although clever, "FDCPA coverage is not defeated by clever arguments for technical loopholes that seek to devour the protections Congress intended." *Donnelly-Tovar v. Selected Portfolio Servicing,* 945 F.Supp.2d 1037, 1047 (N.D. Neb. 2013). At the very least, dismissal is inappropriate as there as an issue of material fact of whether the letters are misleading to an unsophisticated consumer. *See Barton v. Ocwen Loan Servicing, LLC*, 2013 WL 5781324 (D. Minn. 2013) (denying summary judgment in favor of Ocwen on the issue of whether a bankruptcy disclaimer similar to the ones at bar exonerates Ocwen from FDCPA liability; holding that a reasonable juror could find that the notices were an attempt to collect a discharged debt through misleading statements or unfair practices).

This Court has addressed Seterus' bankruptcy disclaimer defense and equally rejected it. In *Tate v. Ocwen Loan Servicing, LLC,* 14-cv-05528, (N.D. Ill. 2015), Judge Bucklo held:

> "that while the bankruptcy disclaimer uses straightforward language, I am not persuaded of its prominent placement, nor do I conclude, as a matter of law, that an unsophisticated consumer would understand it as negating the overall thrust of the account statement, which not only states elsewhere that *is* an attempt to collect a debt, but also contains the hallmarks of a demand for payment, right down to the payment instructions and a detachable payment." *Id.* at *3. (emphasis in original). *See* attached Exhibit A is a true and correct copy of Judge Bucklo's ruling.

Similarly here, the bankruptcy disclaimer language is hidden in small print and cannot overshadow the "hallmarks" of a demand for payment. Each statement expressly demands money from the Plaintiff and any disclaimer language cannot be found to overshadow the overall

8

effect of the letters. Similarly, in *Lara v. Specialized Loan Servicing, LLC,* 2013 WL 4804387 (S.D. Fla. 2013), the Court held that a statement sent by the defendant "is objectively misleading under the applicable standard that it misrepresents the legal status of Plaintiff's debt by, *inter alia,* stating the date on which the next payment is due, despite the debt having been discharged in bankruptcy." *Id*. at *1. The *Lara* Court further found that numerous correspondences sent by defendant that included a bankruptcy disclaimer did not alter the letter's overall misleading effect. *Id*. The *Lara* Court specifically found that a correspondence including a mail-in payment coupon with a payment amount and instructions relating to a discharged debt misrepresented the legal status of the debt and was in violation of the FDCPA. *Id. See also Zotow v. BAC Home Loans Servicing, LP*, 432 B.R. 252, 259 (9th Cir. BAP 2010) (holding that a mortgagee's letters were attempts to collect a debt notwithstanding bankruptcy disclaimer language).

Seterus' contention that the bankruptcy disclaimer negates its express demands for payment on a discharged debt is disingenuous and has been rejected by numerous courts. The totality of circumstances demonstrate that Seterus' letters served one purpose; to collect a discharged debt. The letters are misleading on their face as they can mislead the discharged debtor into believing money is owed on a debt that no longer exists.

**C.** **Plaintiff has Adequately Plead Violations of the Bankruptcy Discharge Injunction**

Seterus next argues that Plaintiff's discharge violation claim fails because it should be brought in bankruptcy court. Seterus is mistaken. This Court has jurisdiction over Plaintiff's claims for violations of the Discharge Injunction pursuant to 28 U.S.C. §1334, which states in pertinent part: "[t]he district courts shall have original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. §1334. However, "each district court *may* provide any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case

under title 11 shall be referred to the bankruptcy judges for the district. 28 U.S.C. 157(a). (emphasis added).

Plaintiff concedes that this district is one that refers bankruptcy matters to bankruptcy judges for our district. *See* U.S. Dist. Ct., N.D. Ill. Gen. R. 2.33(A) (referring all cases under title 11 to the Bankruptcy Court for the Northern District of Illinois pursuant to 28 U.S.C. §157(a)). However, that does not strip this Court of jurisdiction. In *Martin-Trigona v. Champion Sav. & Loan Assoc.,* 892 F.2d 575, 577 (7th Cir. 1989), the Court found that the district court has jurisdiction to adjudicate a suit to enforce one's rights under the Bankruptcy Code pursuant to 28 U.S.C. §157. Moreover, the "district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that the resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce. 28 U.S.C. §157(d).

Here, Plaintiff's claims under the FDCPA, FCRA and ICFA arise from conduct that Plaintiff alleges also violates the Bankruptcy Discharge Injunction. Plaintiff could reopen his bankruptcy case and bring a civil contempt motion against Seterus pursuant to 11 U.S.C. §§105 and 524. However, doing so will be inefficient as the civil contempt motion is directly related to Seterus' unlawful collection practices, which is largely governed by the FDCPA. Considering the close nexus between the two claims, it would be inefficient to have the Bankruptcy Court hear one matter (civil contempt) and this Court to address the FDCPA claims when this Court has jurisdiction to adjudicate both claims pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(d). It is also important to note that the Bankruptcy Court does not have jurisdiction to adjudicate

Plaintiff's FDCPA and ICFA claims as they are not "core matters" as defined by 28 U.S.C. §157(b). Considering this Court has jurisdiction to adjudicate all the claims set forth by Plaintiff, jurisdiction is proper. As such, Plaintiff urges this Court to retain jurisdiction on Plaintiff's discharge violation claim in the interests of judicial economy.

**D.     Plaintiff has Adequately Plead Violations of the ICFA**

Lastly, Seterus argues that Plaintiff's ICFA claim fails because (a) he does not allege any actual damages, and (b) because he failed to plead that he was actually deceived by the letters. Seterus' arguments must fail because (a) Plaintiff does in fact plead damages, and (b) Plaintiff does plead he was deceived by Seterus' letters.

Seterus' argument that Plaintiff did not plead actual damages ignores the face of Plaintiff's complaint. Specifically, Plaintiff expressly alleges that he suffered emotional distress, was harassed, expended time and incurred costs consulting with his attorneys as a result of Seterus' deceptive actions. (Am. Compl. ¶¶253-55.) Moreover, a plaintiff's expenditure of time and money incident to a debt collection effort suffice as damages under ICFA. *Thompson v. CACH, LLC,* 2014 U.S. Dist. LEXIS 151255, at *23-24 (N.D. Ill. 2014). As a result, Seterus' argument that Plaintiff fails to allege actual damages must fall flat.

Seterus next argues that Plaintiff's ICFA claim fails because he failed to plead that he was deceived. Again, Seterus ignores the face of Plaintiff's complaint. Plaintiff expressly alleges that Seterus' letters led him to believe that his bankruptcy had no legal effect. (Am. Compl. ¶255.) Moreover, Plaintiff's complaint alleges that "Seterus intended that [he] rely on its unfair acts" and that the demands "were systematically calculated to induce payment on a debt that is no longer owed." (Am. Compl. ¶ 249.) Even if Plaintiff failed to allege that he was deceived, he need only plead that the defendant intended plaintiff to rely (intentionally or unintentionally) on

the deceptive information. *Chow v. Aegis Mortg. Corp.,* 286 F. Supp. 2d 956, 963 (N.D. Ill. 2003). Reasonable reliance is *not* an element of ICFA deception. *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 576 (7th Cir. 2001). As such, Plaintiff has sufficiently pled his ICFA claim.

## CONCLUSION

Seterus' letters to Plaintiff were clear attempts to collect a debt that was discharged. As such, the letters are false and misleading on their face as the debt was no longer owed pursuant to Plaintiff's bankruptcy discharge. At the very least, whether Seterus' letters were attempts to collect a debt, and thus false and deceptive are generally fact issues that cannot be decided at the pleading stage. *Walker v. National Recovery, Inc*., 200 F.3d 500, 501 (7th Cir. 1999). Seterus' Motion to Dismiss must fail as a matter of law.

WHEREFORE, Plaintiff, Charles Gagnon, respectfully requests this Honorable Court deny Seterus' Motion to Dismiss in its entirety and for any other relief this Honorable Court deems just and appropriate.


Respectfully submitted,

/s/ Daniel J. McGarry
Daniel J. McGarry, Esq. #6309647
Attorney for Plaintiff
Sulaiman Law Group, Ltd.
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
(630) 575 – 8181

**CERTIFICATE OF SERVICE**

      I, Daniel J. McGarry, an attorney, certify that on June 15, 2016, I caused the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)** to be served upon counsel of record through operation of the Court's Case Management/Electronic Case File (CM/ECF) system.

                                              s/ Daniel J. McGarry
                                              Daniel J. McGarry, Esq. #6309647
                                              Attorney for Plaintiff
                                              Sulaiman Law Group, Ltd.
                                              900 Jorie Blvd, Ste 150
                                              Oak Brook, IL 60523
                                              (630) 575 – 8181