**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES GAGNON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15-cv-9526 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| JPMORGAN CHASE BANK, N.A., | ) | |
| SETERUS, INC., PIERCE & | ) | |
| ASSOCIATES, P.C., EQUIFAX | ) | |
| INFORMATION SERVICES LLC, and | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER AND OPINION

Plaintiff Charles Gagnon ("Plaintiff") brings his amended complaint [63] against Defendants JPMorgan Chase Bank, N.A. ("Chase"), Seterus, Inc. ("Seterus"), Pierce & Associates, P.C. ("Pierce"), Equifax Information Services LLC ("Equifax"), and Experian Information Solutions, Inc. ("Experian") (collectively, "Defendants") for alleged violations of (1) the Fair Credit Report Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"); (2) the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"); (3) the bankruptcy discharge injunction pursuant to 11 U.S.C. §§ 524 and 105; (4) the bankruptcy automatic stay pursuant to 11 U.S.C. § 362(k)(1); and (5) the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"). Before the Court are the motions of Defendants Seterus [72], Experian [74], Pierce [82], and Chase [83] to dismiss Plaintiff's amended complaint for failure to state a claim and lack of jurisdiction.

For the reasons explained below, the motions are granted in part and denied in part. Specifically, the Court grants Seterus' motion [72] to dismiss Counts IX and XIII, for violation

of the discharge injunction and the ICFA, respectively, and grants in part Seterus' motion to dismiss Count II, for violation of FDCPA §§ 1692e(2), (8) & (10), and 1692f(1). The Court grants Experian's motion [74] to dismiss Count XI, for violation of FCRA § 1681e(b). The Court grants Pierce's motion [82] to dismiss Count VI, for violation of the discharge injunction, and part of Count I, for violation of FDCPA § 1692c(a)(2). The Court grants Chase's motion [83] to dismiss Counts VII, VIII, and XII, for violation of the discharge injunction, the automatic stay, and the ICFA, respectively. The motions to dismiss are denied in all other respects and all other claims remain in the case. Finally, Seterus' request for an extension of time to file an answer is granted, see [72]; Seterus shall have until January 24, 2017 to file its answer to Count V of Plaintiff's amended complaint. This case is set for further status hearing on January 26, 2017 at 9:00 a.m.

## I.      Background[1]

At all times relevant to this complaint, Plaintiff owned and resided at a residential property located in Lockport, Illinois (the "Property"). Equifax and Experian are consumer reporting agencies that compile and maintain files on consumers on a nationwide basis. Chase and Seterus are mortgage servicers authorized to do business in Illinois. Chase and Seterus both furnish information to the major credit reporting agencies ("CRAs"), which include Equifax and Experian. Pierce is a law firm located in Chicago, Illinois and a debt collector that regularly uses the mail and/or telephones to collect delinquent consumer accounts.

In May 2011, Plaintiff executed a mortgage ("Mortgage Loan") on the Property in favor of Chase. On July 31, 2013, Plaintiff filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois (Case No. 13-30722). Schedule D of

---

[1] For purposes of Defendants' motions to dismiss, the Court assumes as true all well-pled allegations set forth in the first amended complaint [44]. See *Mutter v. Madigan*, 17 F. Supp. 3d 752, 756 (N.D. Ill. 2014).

Plaintiff's bankruptcy petition lists the Mortgage Loan as a secured debt in the amount of $188,638.00. Equifax and Experian are listed on Schedule F of Plaintiff's bankruptcy petition and received notice of the bankruptcy.

Plaintiff filed a Chapter 13 bankruptcy plan along with his bankruptcy petition. The plan proposed to treat Chase's claim as follows: "Debtor is surrendering the [Property] to [Chase] and GreenTree Servicing, LLC in full satisfaction of their claims." [63] at 4. Chase was listed as a creditor of Plaintiff and therefore was served with notice of the bankruptcy petition and the Chapter 13 plan.

On October 11, 2013, the Bankruptcy Court confirmed Plaintiff's Chapter 13 plan.

On June 2, 2014, Chase filed a motion for relief from the automatic stay and co-debtor stay that had previously been entered in Plaintiff's bankruptcy case. Chase's motion acknowledged Plaintiff's intent to surrender the Property. On June 20, 2014, the Bankruptcy Court granted Chase relief from the automatic stay. Chase then attempted to collect the subject loan. In particular, on July 16, 2014, Chase sent Plaintiff a mortgage loan statement stating that Plaintiff had defaulted on the Mortgage Loan and owed a reinstatement amount of $19,809.05. See [63-7] (Plaintiff's Ex. G); [84-2] (Chase's Ex. 2 at 3). The statement showed that a total payment of $19,795.05 was due August 1, 2014 and included a payment coupon. [84-2] at 1. It also stated in one place that "[t]his communication is an attempt to collect a debt and any information obtained will be used for that purpose," but in another place that "[i]f you or your account is subject to pending bankruptcy proceedings, or if you received a bankruptcy discharge, this statement is for informational purposes only and is not an attempt to collect a debt." *Id.* at 2.

On August 4, 2014, the Bankruptcy Court entered on order discharging all of Plaintiff's dischargeable debts, including the Mortgage Loan. The order stated, in part: "The discharge

prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor." [63] at 6.

On August 14, 2014, Chase sent Plaintiff a notice informing him that servicing rights for the Mortgage Loan would be transferred to Seterus effective September 1, 2014. The notice instructed Plaintiff to "send your mortgage payments to your new servicer." [63] at 6. At the time that Chase transferred its servicing rights to the Mortgage Loan, it had actual knowledge that the Mortgage Loan had been discharged in bankruptcy.

On September 15, 2014, Seterus sent Plaintiff a letter informing him that he was in default on the Mortgage Loan in the amount of $15,002.71 and that payment was due October 20, 2014. On September 17, 2014, Plaintiff's bankruptcy case closed. On October 3, 2014, Seterus sent Plaintiff an escrow account statement stating that his new monthly payment on the Mortgage Loan was $1,462.50. On January 28, 2015, Seterus sent Plaintiff an account statement showing a principal balance of $188,636.33 remaining on the Mortgage Loan. On January 29, 2015, Pierce sent Plaintiff a notice demanding payment of the Mortgage Loan in the total amount of $208,519.20. (These four communications are referred to by the parties and later in this opinion as Seterus' "dunning letters.")

At some point after receiving his discharge in bankruptcy, Plaintiff pulled his credit reports and discovered that the CRAs, including Equifax and Experian, were inaccurately reporting the status of the Mortgage Loan. On July 15, 2015, due to the inaccuracy of a credit report from Trans Union, Plaintiff was denied a loan from BMO Harris ("Harris"), for which Plaintiff had applied to help cover the costs of his daughter's college tuition.

On August 4, 2015, Plaintiff sent credit dispute letters to Equifax and Experian and requested that his credit file be updated to reflect the zero balance and discharged status of all accounts discharged in his bankruptcy. Plaintiff attached to his letters copies of his bankruptcy schedules, confirmed Chapter 13 plan, and discharge order.

Experian responded to Plaintiff's credit dispute letter on August 17, 2015. Experian stated that it had updated the Chase and Seterus trade lines to reflect the bankruptcy. However, the account history for the Seterus account was still reporting an account balance of $188,636 and a scheduled payment amount of $988 for April through June 2015. Experian also failed to report that the Seterus trade line was disputed.

Equifax (which is the only Defendant that has not filed a motion to dismiss) responded to Plaintiff's credit dispute letter on August 23, 2015. While Equifax updated its credit file in part, it did not correct the Chase or Seterus trade lines for the Mortgage Loan. The Chase trade line still reported a scheduled payment amount of $1,465 per month and did not indicate that the Mortgage Loan had been discharged in bankruptcy. The Seterus trade line still reported a scheduled payment amount of $988 per month and reported that the Mortgage Loan was over 120 days past due. Equifax's credit file also failed to report that the Chase and Seterus trade lines were disputed.

On October 26, 2015, Plaintiff filed the instant lawsuit. The governing first amended complaint [63] contains thirteen counts, which are discussed in the relevant sections of the Court's analysis below.

## II.    Legal Standard

The four moving Defendants seek dismissal of Plaintiff's amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). "For purposes of a motion to dismiss

under either Rule 12(b)(1) or Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor." *Mutter*, 17 F. Supp. 3d at 756. A Rule 12(b)(1) motion challenges federal subject matter jurisdiction. In ruling on the motion, the district court may look beyond the jurisdictional allegations alleged in the complaint and take into consideration whatever evidence has been submitted on the issue to determine if subject matter jurisdiction exists. *County of Cook v. HSBC N. Am. Holdings Inc.*, 136 F. Supp. 3d 952, 958 (N.D. Ill. 2015). The burden of proof is on the party asserting that jurisdiction exists. *Id.* A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the second amended complaint and assesses its plausibility as a whole. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

## III.    Analysis

### A.    Seterus' Motion to Dismiss [72][2]

#### 1.    FDCPA claims (Count II)

##### a.    FDCPA § 1692c(a)(2)

Plaintiff alleges that Seterus violated FDCPA § 1692c(a)(2) by sending dunning letters directly to Gagnon when it knew, as a matter of public record from Gagnon's Notice of Chapter 13 bankruptcy, that Gagnon was represented by an attorney. See 15 U.S.C. § 1692c(a)(2). Seterus argues that this claim should be dismissed because there are no allegations in the

---

[2] Seterus has not moved to dismiss Count V of Plaintiff's amended complaint, for violation of the FCRA. See [72]. Plaintiff already voluntarily dismissed Count IV of his amended complaint against Seterus, which also alleged an FCRA violation. See [67].

amended complaint that Seterus had actual knowledge of the bankruptcy or of Plaintiff's representation by counsel. See [73] at 10 (citing *Dore v. Five Lakes Agency, Inc.*, 2015 WL 4113203, at *4 (N.D. Ill. July 8, 2015)). Plaintiff responds that this is a fact argument that is inappropriate for a Rule 12(b)(6) motion.

The Court denies Seterus' motion to dismiss this portion of Plaintiff's FDCPA claim. Section 1691c(a)(2) provides that "a debt collector may not communicate with a consumer in connection with the collection of any debt" if "the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer." 15 U.S.C. § 1692c(a)(2). Plaintiff alleges that Seterus "knew that [Plaintiff] was represented by counsel" when it sent him dunning letters, that Seterus, as a "sophisticated debt collector, . . . should have systems and procedures in place to identify accounts included in bankruptcy," and that the identity and contact information of Plaintiff's bankruptcy counsel was a "matter of public record" from the bankruptcy docket. [63] at 15.

Seterus has not demonstrated that these allegations are insufficient at the pleading stage to plausibly allege that Seterus had actual notice that Plaintiff was represented by counsel. The primary case on which Plaintiff relies, *Dore*, is inapposite because it was decided at the summary judgment stage, and the plaintiff there failed to "marshal[] any evidence that [the defendant debt collector] knew that she was represented by an attorney." *Dore*, 2015 WL 4113203, at *4. Plaintiff is not required to marshal specific evidence of Seterus' knowledge to avoid a motion to dismiss. Such evidence would presumably be in Seterus' hands, and Plaintiff may need

discovery to obtain it. The other case on which Plaintiff relies, *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004), is also inapplicable, because it addresses only whether a creditor's actual knowledge that a debtor is represented by counsel can be imputed to the debt collector. In this case, Plaintiff's allegations suggest that Seterus itself knew that Plaintiff was represented by counsel, due to its own status as a "sophisticated debt collector" that "should have systems and procedures in place" to identify whether a debt it is attempting to collect is included in a bankruptcy in which the debtor is represented by counsel. While Plaintiff's claim may ultimately be dismissed at the summary judgment stage if Plaintiff fails to come forward with any evidence that Seterus' systems and procedures did, in fact, provide it with actual knowledge that Plaintiff was represented by counsel with respect to the debt it was attempting to collect, Plaintiff's pleadings are sufficient to survive a motion to dismiss.

### b. FDCPA §§ 1692e(2), (8) & (10) and 1692f(1)

Plaintiff alleges that Seterus violated FDCPA § 1692e(2), by falsely representing that the subject debt was collectable at the time Seterus' dunning letters were sent. See 15 U.S.C. § 1692e(2). Plaintiff also alleges that Seterus violated FDCPA § 1692e(8), by falsely reporting to Experian and Equifax that Plaintiff was obligated to make a monthly payment on the Mortgage Loan and that the Mortgage Loan was past due, and by failing to designate the trade line on the Mortgage Loan as "disputed." See 15 U.S.C. § 1692e(8). Plaintiff further alleges that Seterus violated FDCPA § 1692e(10) by falsely representing to Plaintiff in the dunning letters that the Mortgage Loan was due, and FDCPA § 1692f(1) by attempting to collect a debt not permitted by law, *i.e.*, the Mortgage Loan after it had been discharged in bankruptcy. See 15 U.S.C. §§ 1692e(10), 1692f(1).

Seterus argues that these claims should be dismissed for two primary reasons. First,

Seterus argues that the dunning letters did not contain any false representations, because the bankruptcy did not extinguish the Mortgage Loan or Seterus' lien on the Property. According to Seterus, a debtor's surrender of collateral property does not satisfy its obligation under a mortgage lien, and the mortgage lien on collateral property passes through bankruptcy unaffected. [73] at 5. Thus, the bankruptcy extinguishes an action against the debtor *in personam*, but leaves intact an action against the debtor *in rem*. *Id.* (citing *In re Brisco*, 486 B.R. 422, 429 (Bankr. N.D. Ill. 2013)). Seterus explains that the foreclosure on the Property was not completed until September 1, 2015—more than one year after the Discharge Order was entered on August 4, 2014—and therefore there are no plausible allegations suggesting that Seterus attempted to collect a debt after the debt was discharged in bankruptcy and the lien was extinguished by foreclosure.

Second, Seterus argues that its dunning letters were sent for informational purposes only and therefore do not constitute attempts to collect a debt from Plaintiff. Specifically, Seterus argues that the September 15, 2014 notice of default was required by 735 ILCS 5/15-1504(c)(9) and the Mortgage Loan to provide Plaintiff with notice before the start of the foreclosure process. Seterus also argues that the October 3, 2014 escrow account statement and the January 28, 2015 annual escrow account disclosure were notices it was required to send to comply with the federal Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq*, and therefore were sent for purposes other than debt collection. Seterus further argues that none of the dunning letters can be construed as attempts to collect a debt, because they all contain, in part, the following disclaimer: "IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE

COLLATERAL PROPERTY." [73] at 8.

In response, Plaintiff does not dispute that the Discharge Order left intact Seterus' mortgage lien on the Property, but argues that the complaint alleges that Seterus's notices were attempts to collect from Plaintiff *personally*, rather than *in rem* from the proceeds of the foreclosure sale. Plaintiff also argues that whether a communication was sent in connection with an attempt to collect a debt and whether a disclaimer prevented a dunning notice from being misleading are questions of fact that cannot be resolved on a motion to dismiss. According to Plaintiff, the notices' disclaimer language is small and overshadowed by other hallmarks indicating that the notices are demands for payment from Plaintiff personally.

Taking into consideration the parties' arguments, the Court concludes that Plaintiff's claims for violation of FDCPA § 1692e(2), (8) & (10), and f(1) will be allowed to proceed in part. While both parties recognize that Seterus' mortgage lien on the Property remained intact following the Bankruptcy Court's discharge order, Seterus' September 15, 2014 notice of default and October 3, 2014 escrow account statement are not so clear that the Court can conclude at the motion to dismiss stage that the letters are informational rather than attempts to collect debt, or that the letters' disclaimers make their informational nature sufficiently clear to the unsophisticated consumer. However, there is nothing in Seterus' January 28, 2015 annual escrow account disclosure statement that could plausibly be read as an attempt to collect a debt, and therefore Plaintiff's FDCPA claims based on that statement will be dismissed.

Whether a debt collector's communication is false, deceptive, or misleading is evaluated "through an objective standard of the 'unsophisticated consumer.'" *Simkus v. Cavalry Portfolio Services, LLC*, 12 F. Supp. 3d 1103, 1107 (N.D. Ill. 2014) (quoting *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 564 (7th Cir. 2004)). This standard assumes that the debtor is "uninformed,

naïve, or trusting," but nonetheless possesses "rudimentary knowledge about the financial world" and is "capable of making basic logical deductions and inferences." *Fields*, 383 F.2d at 564; see also *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 774 (7th Cir. 2007) ("in deciding whether for example a representation made in a dunning letter is misleading the court asks whether a person of modest education and limited commercial savvy would be likely to be deceived").

Plaintiff has plausibly alleged that the September 15, 2014 notice of default [63-10] would lead an unsophisticated consumer to believe that Seterus was attempting to collect debt from Plaintiff personally, rather than simply through enforcement of the lien on the proceeds of the foreclosure sale. The letter is addressed to Plaintiff, shows an "Amount Due" of $15,002.71, and a "Due By" date of October 20, 2014. [63-10] at 2. The letter also demands that Plaintiff bring his loan up to date by "payment of the amount shown," and warns that "[i]f full payment of the default amount is not received" by October 20, 2014, then "we will accelerate the maturity date of your loan and upon such acceleration the ENTIRE balance of the loan . . . shall, at once and without further notice, become immediately due and payable." *Id.* The letter concludes by telling Plaintiff that if he is "having difficulty making [his] payments," to call one of Seterus' loan specialists. *Id.* at 3.

Further, Seterus has not demonstrated, as a matter of law, that its disclaimer language is sufficiently clear that it is implausible that an unsophisticated debtor would believe that Seterus was attempting to collect a debt from the debtor personally. The disclaimer provides: "THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU

ARE IN BANKRUPCY OR RECEIVED A BANKRUPTYC DISCHARGE OF THIS DEBT, THIS LETTER IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY." Seterus has not cited any cases in which a debt collector's motion to dismiss an FDCPA claim for an allegedly misleading notice has been granted based on similar disclaimer language, where other parts of the notice could plausibly be read as an attempt to collect a debt. In contrast, Plaintiff has cited several out-of-circuit cases in which courts confronted with similar bankruptcy disclaimers have denied summary judgment to the debt collector or granted judgment for the debtor on the basis that the notice read as a whole could be or was misleading. See *Barton v. Ocwen Loan Servicing LLC*, 2013 WL 5781324, at *2 (D. Minn. Oct. 25, 2013) (denying debt collector's motion for summary judgment on FDCPA claim alleging that debt collector sent plaintiff letters illegally attempting to collect on debt that had been discharged in bankruptcy, and concluding that a reasonable juror could find that the notices were misleading where, despite inclusion of bankruptcy disclaimer language, the letters also included a current amount due, principal balance, and interest rate); *Lara v. Specialized Loan Servicing, LLC*, 2013 WL 4804387, at *1 (S.D. Fla. Sept. 6, 2013) (concluding in findings of fact and conclusions of law that debt collector's letter, sent to plaintiff whose home mortgage had been discharged in bankruptcy, was objectively misleading in violation of the FCPA even with bankruptcy disclaimer language included, because the disclaimer did not alter the overall misleading effect of the letter caused by inclusion of payment amount, instructions, and a mail-in coupon).

The Court also finds instructive *Whalen v. Specialized Loan Servicing, LLC*, 155 F. Supp. 3d 905 (W.D. Wis. 2016), in which the court granted the debt collector's motion to dismiss an FDCPA claim based on an allegedly deceptive letter to a consumer who had received a

bankruptcy discharge of her loan. While the letter at issue in that case contained the bankruptcy discharge notice, this was not dispositive; instead, the court further reasoned that the letter did not request payment or threaten adverse consequences, and therefore contained no language that would have led the consumer to doubt the bankruptcy disclaimer. *Id.* at 910-11. In this case, by contrast, the notice of default both requests payment in a particular amount by a particular date, and threatens adverse consequences including acceleration of the maturity date of the total principal amount. Further, *Whalen* illustrates how a debt collector might make clear to the holder of a mortgage that has been discharged in bankruptcy that the bankruptcy did not discharge the mortgage lien. In addition to the bankruptcy disclaimer discussed above, the notice at issue in that case included another disclaimer which provided: "BANKRUPTCY NOTICE— IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, PLEASE BE ADVISED THAT THIS NOTICE IS SENT TO COMPLY WITH THE REQUIREMENTS OF THE FAIR DEBT COLLECTION PRACTICES ACT ('FDCPA'). THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE. HOWEVER, IT IS BEING SENT TO YOU AS A THE LIEN AGAINST THE COLLATERAL PROPERTY HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY." *Id.* at 908.

Plaintiff has also plausibly alleged that Seterus' October 3, 2014 escrow account statement would lead an unsophisticated consumer to believe that Seterus was attempting to

collect debt from Plaintiff personally, even though those letters also contained the bankruptcy disclaimer language. The escrow account statement [63-11] shows a "Total Current Payment" amount of $988.43 and a "Total NEW Payment"—which includes a higher escrow amount to make up for the escrow deficiency—of $1,462.50. The escrow account statement also explains that "[f]or your convenience we have spread the deficiency" of $4,516.76 "over the next 60 installments and included this amount in your escrow payment." This language might plausibly suggest to an unsophisticated debtor that he personally was required to continue making monthly payments on his mortgage loan, even though his personal liability for the mortgage loan had been discharged in bankruptcy. And "the disclaimer did not necessarily detract from an interpretation" that the escrow notice "was an attempt to induce plaintiff to make a payment." *Whalen*, 155 F. Supp. 3d at 911.

Plaintiff has not, however, plausibly alleged that Seterus' January 28, 2015 annual escrow account disclosure was a false or misleading attempt to collect a debt in violation of the FDCPA. Unlike the other two notices, there is no language in the annual escrow account disclosure that requests payment or threatens adverse consequences. See *Whalen*, 155 F. Supp. 3d at 910-11. Therefore, the Court grants Seterus' motion to dismiss the FDCPA claims to the extent that they are based on the annual escrow account disclosure.

Finally, the Court grants in part Seterus' motion to dismiss Plaintiff's claim that Seterus violated FDCPA § 1692e(8) to the extent that the claim is based on Seterus' alleged failure to report to Experian and Equifax that the Mortgage Loan was disputed. See 15 U.S.C. § 1692e(8) (prohibiting a debt collector from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed"). As Seterus explains, the amended

complaint does not allege that, after learning of Plaintiff's dispute, Seterus omitted the fact that the debt was disputed when reporting to Experian and Equifax. Plaintiff offers no response to this argument. [73] at 12. Therefore, the Court grants Seterus' motion to dismiss the FDCPA § 1692e(8) claim to the extent that it is based on Seterus' alleged failure to report to Experian and Equifax that the Mortgage Loan was disputed.

In sum, the Court (1) grants Seterus' motion to dismiss Plaintiff's claims under FDCPA § 1692e(2), (8) & (10), and f(1) to the extent that they are based on the January 28, 2015 annual escrow account disclosure; (2) grants Seterus' motion to dismiss the FDCPA § 1692e(8) claim to the extent that it is based on Seterus' alleged failure to report to Experian and Equifax that the Mortgage Loan was disputed; and (3) denies in all other respects Seterus' motion to dismiss Plaintiff's claims under FDCPA §§ 1692e(2), (8) & (10), and 1692f(1).[3]

### 2.      Violation of the Discharge Injunction (Count IX)

In his amended complaint, Plaintiff alleges that Seterus violated the Order of Discharge by willfully attempting to collect the Mortgage Loan when it had actual notice of Plaintiff's bankruptcy and the discharged status of the Mortgage Loan, in violation of 11 U.S.C. § 524(a)(2). Seterus argues that this claim must be dismissed because allegations that Section 524(a)(2) has been violated can be adjudicated only by the bankruptcy court. Plaintiff responds that the district court can withdraw a proceeding from a bankruptcy referral on timely motion of a party or the court, if it determines that resolution of the proceeding requires consideration of both Title 11 and other United States laws, citing 28 U.S.C.§ 157(d).

The Court concludes that dismissal of Plaintiff's claim for violation of Section 524(a)(2)

---

[3] The Court does not consider Seterus' argument, made for the first time in its reply brief, that Plaintiff's FDCPA claim fails due to failure allege a "concrete" injury. Arguments raised for the first time in a reply brief on a motion to dismiss for failure to state a claim are waived. See *Liska v. Dart*, 60 F. Supp. 3d 889, 900 (N.D. Ill. 2014).

is appropriate. After a debtor obtains a discharge under the Bankruptcy Code, creditors are enjoined from attempting to collect discharged debts "as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). "A debtor dunned after" obtaining a discharge can "ask the bankruptcy judge to hold the other party in contempt of . . . the discharge injunction." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004). The Seventh Circuit and district courts have held that a debtor cannot file suit directly in federal district court to enforce Section 524(a)(2). See *Cox v. Zale Del., Inc.*, 239 F.3d 910, 916–17 (7th Cir. 2001); *Dore*, 2015 WL 4113203, at *2. Further, Plaintiff has not filed a motion under 28 U.S.C.§ 157(d), so the Court need not consider Plaintiff's argument that this provision would grant the Court discretion to exercise jurisdiction over Plaintiff's claim for violation of section 524(a)(2). Nor, in light of *Cox* and *Dor*, does the Court find it appropriate to lift the stay on its own motion. For these reasons, the Court grants Seterus' motion to dismiss Count IX.

### 3.      Violation of the ICFA (Count XIII)

In Count XIII of the amended complaint, Plaintiff alleges that Seterus violated 815 ILCS 505/2 by demanding payment on the Mortgage Loan while knowing that the Mortgage Loan was not collectable at the time demand was made, since it had been discharged in bankruptcy. Plaintiff alleges that he expended time and incurred costs consulting with his attorneys as a result of Seterus' deceptive collection actions, and also suffered emotional distress due to being led to believe that his bankruptcy had no legal effect. Seterus argues that Count XIII must be dismissed because Plaintiff does not allege actual damages, *i.e.* actual pecuniary loss, which is an element of an ICFA claim and must be pled with particularity. [73] at 14 (citing *Avery v. State Farm Mut. Auto Ins. Co.*, 216 Ill. 2d 100, 180 (Ill. 2005); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014)). According to Seterus, attorneys' fees and emotional

damage do not qualify as actual damages under ICFA. [73] at 14 (citing *Price v. Seterus, Inc.*, 2016 U.S. Dist. LEXIS 48028, *22 (N.D. Ill. Apr. 8, 2016); *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 913 (N.D. Ill. 2012)).

Plaintiff argues in response that, under ICFA, the expenditure of time and money incident to defending a debt collection effort—and in particular Plaintiff's expenditure of "time and incurred costs consulting with his attorneys"—suffices as damages. [92] at 11 (citing *Thompson v. CACH, LLC*, 2014 WL 5420137, at *8 (N.D. Ill. Oct. 24, 2014)).

The Court concludes that Plaintiff's allegation that he spent time and money consulting with his attorneys is insufficient to survive a motion to dismiss on the damages element of an ICFA claim. "To state a claim under the ICFA, Plaintiffs must allege five elements: (1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) the damages were proximately caused by the defendant's deception." *Blankenship v. Pushpin Holdings, LLC*, 157 F. Supp. 3d 788, 792 (N.D. Ill. 2016). As Plaintiff implicitly concedes, "emotional damages do not constitute actual damages under the ICFA." *Thrasher-Lyon*, 861 F. Supp. 2d at 913. Instead, allegations of "actual pecuniary loss" are required. *Camasta*, 761 F.3d at 739.

Further, Plaintiff cites no Illinois case law supporting his claim that time and money spent meeting with an attorney constitute actual damages under ICFA. Plaintiff's argument relies solely on one unpublished district court case, *Thompson*, 2014 WL 5420137, at *8. However, unlike the plaintiff in *Thompson*, Plaintiff here does not allege that he was required to *defend* a debt collection action initiated by Seterus. Other courts in the district have found *Thompson* inapplicable on this basis. See *Sulaiman v. Biehl & Biehl, Inc.*, 2016 WL 5720476, at

17

*9 (N.D. Ill. Sept. 30, 2016) (finding *Thompson* inapplicable to plaintiff's ICFA claim, where plaintiff had not "expended time and money *defending* a debt collection lawsuit" (emphasis in *Sulaiman*)); see also *Zuber v. Bayview Loan Servicing, LLC*, 2016 WL 6680519, at *2 (N.D. Ill. Nov. 14, 2016) (time spent in administration of FDCPA lawsuit not, by itself, sufficient to constitute actual damages, where there is no indication in complaint that plaintiff defended the debt collection effort or expended money doing so).

In addition, the fact that ICFA separately provides for the award of attorneys' fees to successful plaintiffs also persuades the Court that a plaintiff must plead more than that he had to pay to consult with an attorney in order to allege actual damages under the ICFA. See *Garcia v. Receivables Performance Mgmt., LLC*, 2014 WL 5543885, at *2 (N.D. Ill. Nov. 3, 2014) (explaining that because ICFA "differentiates between attorney's fees and actual damages, it is clear that [a plaintiff] must allege more than just pecuniary losses relating to meetings he had with his attorneys"); *Price v. Seterus, Inc.*, No. 15 C 7541, 2016 WL 1392331, at *7 (N.D. Ill. Apr. 8, 2016) ("declin[ing] to read the actual damages prong [of ICFA] so broadly as to allow for the requirement to be met simply by a plaintiff's spending time consulting with his attorney," "particularly as attorney's fees are reimbursed pursuant to a different part of the statute").

Therefore, the Court grants Seterus' motion to dismiss Count XIII of Plaintiff's amended complaint.

### 4.     Extension of Time to Answer Count V

In addition to moving to dismiss the complaint, Seterus also moves for an extension of time to respond to one of Plaintiff FCRA claims against it, Count V. Seterus explains that its response to Count V will depend on how the Court rules on its motion to dismiss. Plaintiff does not oppose Seterus' request. Therefore, the Court will grant Seterus until January 24, 2017 to

file its answer to Count V of Plaintiff's amended complaint.

**B.**     **Experian's Motion to Dismiss [74]**

Plaintiff brings one claim against Experian, for violation of the FCRA (Count XI). Plaintiff alleges that Experian prepared Plaintiff's credit report with inaccurate information—namely, that Plaintiff's Mortgage Loan from Seterus was outstanding and in default—despite knowing that the loan had been discharged in bankruptcy.  Based on these facts, Plaintiff alleges that Experian violated (1) Section 1681e(b) of the FCRA by failing to establish a reasonable procedure to assure the accuracy of its reports; (2) Section 1681i(a)(1) by failing to conduct a reasonable investigation to determine if Plaintiff's dispute was accurate or to delete or correct inaccurate information; (3) Section 1681i(a)(2) by failing to send Chase all relevant information regarding Plaintiff's dispute; (4) Section 1681i(a)(4) by failing to review and consider all relevant information from Plaintiff, Chase, and Seterus; and (5) Section 1681i(a)(5) by failing to delete or modify incorrect information in Plaintiff's credit report.  See 15 U.S.C. §§ 1681e(b) and 1681i(a)(1), (2), (4), & (5).

Experian moves to dismiss the FCRA claim on the basis that, after it received Plaintiff's dispute, it modified the account and its subsequent report was accurate as a matter of law and therefore cannot be the basis of a claim under Section 1681e(b) or 1681i(a) for including "inaccurate information" in a credit report.

The Court agrees with Experian and will dismiss Count XI of the amended complaint. To state a claim for violation of Section 1681e(b) or 1681i of the FCRA, a plaintiff must plausibly allege that "something in his credit report was inaccurate, or at least misleading." *Johnson v. Trans Union, LLC*, 524 F. App'x 268, 270 (7th Cir. 2013) (explaining that a successful plaintiff "must prove that something in his credit report was inaccurate, or at least

misleading, to show that the defendants' procedures were unreasonable under 15 U.S.C. § 1681e(b) . . . or that the defendants failed to reasonably reinvestigate under 15 U.S.C. § 1681i"); see also *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) (to state a claim under Section 1681e(b), plaintiff must sufficiently allege that the credit reporting agency's report contained inaccurate information); *Smith v. Trans Union, LLC*, 2015 WL 1188189, at *5 (N.D. Ill. Mar. 12, 2015) (plaintiff required to show that his credit report contained inaccurate information to prove a claim under section 1681e(b) or 1681i).

In this case, the full version of Exhibit S to Plaintiff's amended complaint, an Experian report dated August 17, 2015, contradicts Plaintiff's allegations that Experian's post-dispute report inaccurately showed Plaintiff's Mortgage Loan from Seterus as outstanding and in default. See Doc. [63-19] at 7-8. The document is controlling over Plaintiff's conflicting allegations. See *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss."). The report shows that the Seterus account had a $0 balance "as of Jul 2015" and provides the following status: "Discharged through Bankruptcy Chapter 13. This account is scheduled to continue on record until Jul 2020. This item was updated from our processing of your dispute in Aug 2015." [64-19] at 7. It also shows that the "Debt [was] included in Chapter 13 Bankruptcy on Aug 04, 2014." *Id.* This portion of the report is followed by an "Account history," which the report explains is included "as additional information about your account" if "your creditor reported your account balances to us." *Id.* This "account history" shows an "account balance" of $188,636 and a "scheduled payment amount" (or "SPA") of "988" for April, May, and June 2015—before Plaintiff initiated the dispute in August 2015— but lists "no data" (or "ND") as the "actual amount paid" (or "AAP"). *Id*. at 7-8.

The Court sees nothing about this information that is inaccurate or misleading. The Seterus account had a $0 balance, because it had been discharged in bankruptcy. The fact that the account was discharged through Chapter 13 bankruptcy and when the discharge took place are clearly noted. Although not dispositive, the Court notes that this part of Experian's report is consistent with guidance from the Federal Trade Commission, which advises that "[a] consumer report may include an account that was discharged in bankruptcy (as well as the bankruptcy itself), as long as it reports a zero balance to reflect the fact that the consumer is no longer liable for the discharged debt." Federal Trade Commission, *40 Years of Experience with the Fair Credit Reporting Act, an FTC Report with Summary of Interpretations* (July 2011), at 68, *available at* https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.

Further, although the report's "account history" shows that Seterus reported account balances and scheduled payments to Experian for April, May, and June 2015, [64-19] at 8, it is not plausible that even an unsophisticated consumer would be misled into thinking these amounts were due given the report's unambiguous statement that the account was "discharged through Bankruptcy Chapter 13," had a $0 balance "as of Jul 2015," and had been updated as a result of Experian "processing [Plaintiff's] dispute in Aug 2015." [64-19] at 7. Therefore, the Court agrees with Experian that "nothing in Exhibit S suggests that," following Plaintiff's dispute, "Plaintiff remain[ed] personally liable on the Seterus debt or that he [wa]s otherwise delinquent on the loan." [95] at 3. Plaintiff's allegations to the contrary are not plausible, as required to survive a motion to dismiss, see *Cochran*, 828 F.3d at 599, as they are contradicted by the attached exhibit on which they are based, see *Bogie*, 705 F.3d at 609; *Cornielsen v. Infinium Capital Holdings, LLC*, 168 F. Supp. 3d 1033, 1041-42 (N.D. Ill. 2016); *Paragon*

*Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 888 (N.D. Ill. 2014).  Therefore, the Court grants Experian's motion to dismiss Count XI of the amended complaint.

## C.    Pierce's Motion to Dismiss [82]

### 1.    FDCPA Claims (Count I)

#### a.    FDCPA § 1692c(a)(2)

Plaintiff alleges in Count I that Pierce violated Section 1692c(a)(2) of the FDCPA by sending a dunning letter directly to Plaintiff while knowing that Plaintiff was represented by counsel.  See 15 U.S.C. § 1692c(a)(2).  According to Plaintiff, Pierce, as a sophisticated debt collection law firm, should have had systems and procedures in place to identify accounts included in bankruptcy, and Plaintiff's counsel's identity and contact information were expressly stated in Plaintiff's notice of Chapter 13 bankruptcy, which is a matter of public record.

Pierce argues that this portion of Plaintiff's FDCPA claim should be dismissed, in part because Plaintiff's bankruptcy case closed on September 17, 2014, more than four months before Pierce sent Plaintiff a dunning letter on January 29, 2015.[4]  The Court agrees with Pierce that it is not plausible based on the facts alleged that Pierce knew Plaintiff was represented by counsel with respect to the debt that Seterus hired Pierce to collect.  Assuming Pierce had systems in place to check whether the account was included in bankruptcy, and the bankruptcy docket provided Plaintiff's counsel's contact information, the bankruptcy proceedings had been complete for more than four months by the time Pierce became involved and sent the dunning letter.

In *Berndt v. Fairfield Resorts, Inc.*, 337 F. Supp. 2d 1120 (W.D. Wis. 2004), another district court in this circuit granted summary judgment in favor of the debt collector on a Section

---

[4] The Court finds Plaintiff's other arguments concerning Section 1692c(a)(2)—which echo the arguments made by Seterus—unpersuasive for the same reasons discussed above in regard to Seterus' motion to dismiss the Section 1692c(a)(2) claim against it.

1692c(a)(2) claim under an analogous fact pattern. In *Berndt*, the debt collector had actual knowledge that consumers were represented by counsel with respect to the cancellation of timeshare agreements, but did not have actual knowledge that the consumers were represented by counsel with respect to debt for association fees, where the debt collector contacted the debtors about the association fees after the consumers' legal dispute over the cancellation had been resolved. See *id.* at 1133. Similarly, in this case, even if Pierce's systems could and did pick up the fact that Plaintiff had discharged some debts in bankruptcy, Plaintiff has not plausibly alleged that Pierce had actual notice that Plaintiff's lawyers in that now-concluded case were still representing him four months later. Cf. *Udell v. Kansas Counselors, Inc.*, 313 F. Supp. 2d 1135, 1144-45 (D. Kan. 2004) (debt collector did not violate Section 1692c(a)(2) by communicating directly with consumers regarding newly-assigned debts, even though debt collector knew that consumer was represented by attorney with respect to previous debts, where attorney's letters to debt collector did not specify accounts for which he was representing consumers, and debt collector did not contact consumers directly with respect to any debt for which it knew they were represented by counsel).

### b. FDCPA §§ 1692e and 1692f

Plaintiff also alleges that Pierce violated FDCPA § 1692e(2) by falsely representing that the Mortgage Loan "was collectible at the time the dunning letter was sent" and violated FDCPA § 1692f by "attempt[ing] to collect a debt not permitted by law as [Plaintiff's] obligation to pay the [Mortgage Loan] was eliminated via his bankruptcy filing and subsequent discharge." [63] at 13; see also 15 U.S.C. §§ 1692e(2), 1692f.

Pierce argues that both claims should be dismissed. According to Pierce, Plaintiff's claim "that the amount sought is not owed" is barred by the *Rooker-Feldman* doctrine and the

doctrine of res judicata, because Plaintiff is "subject to a judgment in the underlying mortgage foreclosure" brought in Illinois state court. [82] at 5-6. Plaintiff responds that he "never alleges Pierce was precluded from obtaining an *in rem* judgment of foreclosure," but instead is alleging that "Pierce was precluded from attempting to collect the subject debt from Plaintiff *personally* after the Bankruptcy Court granted him a discharge." [91] at 3. Thus, according to Plaintiff, he is not challenging the underlying mortgage foreclosure and therefore is not subject to *Rooker-Feldman* or res judicata. In reply, Pierce argues that the foreclosure action was a "judgment . . . against [Plaintiff] for $213,860.75," and that Plaintiff's assertion that he does not owe this money is directly contrary to the foreclosure judgment. [108] at 2.

The Court concludes that it cannot resolve this issue on a motion to dismiss. Pierce has not demonstrated as a matter of law that the foreclosure action subjected Plaintiff to personal liability in the amount of $213,860.75, such that Plaintiff should be estopped from bringing an FDCPA claim based on Pierce's letter to Plaintiff demanding payment of $208,519.20 and instructing Plaintiff how to make the payment. Although the bank's foreclosure complaint joins Plaintiff as a defendant, [82-1] at 3, it also indicates that Plaintiff is *not* personally liable for any deficiency following foreclosure *id*. at 4-5, and that the action does not seek an *in personam* or *in rem* deficiency judgment if personal liability on the Mortgage Loan was discharged in bankruptcy (which it was), *id.* at 5-6. Further, the "judgment for foreclosure and sale" shows that the property will be subject to a foreclosure sale, [82-4] at 4, not that Plaintiff is personally liable for the amount that the Court determined was due to the bank, *id*. at 2. Therefore, the Court denies Pierce's motion to dismiss Plaintiff's claims for violation of FDCPA §§ 1692e and 1692f.

### 2. Violation of the Discharge Injunction (Count VI)

The Court grants Pierce's motion to dismiss Count VI for the same reasons it grants Seterus' motion to dismiss Count IX, as explained above.

### D. Chase's Motion to Dismiss [83]

### 1. FCRA Claims (Count III)

Plaintiff alleges that Chase violated section 1681b of the FCRA by accessing his credit file on September 12, 2014 without a permissible purpose, because his personal liability to Chase for the Mortgage Loan had already been extinguished on August 4, 2014 with his bankruptcy discharge. See 15 U.S.C. § 1681b.

Chase moves to dismiss this claim on the basis that Plaintiff fails to allege that Chase acted with an impermissible purpose. Section 1681b(a)(3)(F) authorizes a consumer reporting agency to furnish a consumer report to a person whom it has reason to believe has "a legitimate business need for the information—(i) in connection with a business transaction that is initiated by the consumer; or (ii) to review an account to determine whether the consumer continues to meet the terms of the account." 15 U.S.C. § 1681b(a)(3)(F). According to Chase, it had a "legitimate business need for the information" because the bankruptcy and Plaintiff's surrender of the collateral property did not fully satisfy Plaintiff's obligations under the mortgage lien, and the mortgage lien passed through bankruptcy unaffected. [84] at 6 (citing 15 U.S.C. § 1681b(a)(3)(F); *Germain v. Bank of Am., N.A.*, 2014 WL 5802018, at *6 (W.D. Wis. Nov. 7, 2014); *Saumweber v. Green Tree Servicing, LLC*, 2015 WL 2381131, at *5 (D. Minn. May 19, 2015)).

The Court concludes that Plaintiff has adequately pled a violation of Section 1681b. Plaintiff alleges, and Chase does not dispute, that Chase accessed Plaintiff's credit report after

Plaintiff's personal liability on the Mortgage Loan had been discharged in bankruptcy. Plaintiff also alleges that Chase had no legitimate business purpose for accessing the credit report, because following the discharge, Chase knew that the Mortgage Loan was not collectible from Plaintiff.

Chase has not demonstrated, as a matter of law based on the pleadings, that it had a legitimate business reason to access Plaintiff's credit report following the bankruptcy discharge. Chase does not specify what legitimate business purpose it had for accessing Plaintiff's credit report. Chase does not argue that it checked Plaintiff's credit report "in connection with a business transaction" initiated by Plaintiff, such as a request to modify the Mortgage Loan. 15 U.S.C. § 1681b(a)(3)(F). Nor does Chase argue that it checked Plaintiff's credit "to review [the] account to determine whether [Plaintiff] continue[d] to meet the terms" of the Mortgage Loan, *id.*; Plaintiff indisputably did not, since he went into default on the Mortgage Loan and discharged it in bankruptcy.

Further, although both parties recognize that the bankruptcy did not discharge *in rem* liability on the mortgage, it is not clear from the case law cited by the parties whether Plaintiff's surrender of the property as part of his confirmed Bankruptcy plan eliminated any legitimate business reason for Chase to access Plaintiff's credit report following the bankruptcy discharge. Neither of the cases on which Plaintiff relies are on point. In *Germain*, 2014 WL 5802018, at *6, which was decided at the summary judgment stage, the court recognized that the "discharge of a debt alone does not extinguish defendant's right to obtain plaintiffs' consumer reports" and "[u]ntil the borrower has fulfilled his debt obligation, lenders may still use the borrower's consumer report to review the account" without violating section 1681b. However, in that case, the debtors remained in possession of their home even after their bankruptcy, they contested the

foreclosure of their home, and, most importantly here, there is no indication from the opinion (or Chase's discussion of *Germain*) that the debtors surrendered their home as part of their confirmed bankruptcy plan. *Id.* at *7. Further, the bank provided evidence that it accessed the debtors' accounts to determine if they were eligible for a loan modification, a legitimate business purpose. *Id.*

Similarly, in *Saumweber*, 2015 WL 2381131, at *5, the lender that was sued for violation of Section 1681b had a clear ongoing business relationship with the debtor following the discharge in bankruptcy of the debtor's personal liability on a mortgage loan. The debtor remained in continuing possession of the home following the bankruptcy, the debtor continued to make voluntary payments on the mortgage account, and the lender provided evidence that it accessed the debtor's credit report to evaluate his eligibility for a loan modification, a legitimate business purpose. *Id.* In this case, by contrast, it is not clear from the parties' briefing whether any "credit relationship existed" between Chase and Plaintiff following the bankruptcy discharge, despite Chase's available *in rem* remedy for enforcing the mortgage lien. *Id.*

As a second ground for dismissing Plaintiff's Section 1681b claim, Chase argues that Plaintiff has not plausibly alleged that he suffered actual damages as a result of Chase accessing his credit report following the bankruptcy discharge. In response, Plaintiff argues that since he is alleging a willful violation of the FCRA, he is entitled to statutory and punitive damages under 15 U.S.C. § 1681n, regardless of whether he suffered any actual damages.

The Court concludes that Plaintiff has not alleged a claim for actual damages under the FCRA, but that his claim will not be dismissed because he plausibly alleges that he is entitled to statutory and punitive damages for Chase's alleged willful violation of Section 1681b. Section 1681n(a) imposes liability on a person who has willfully violated the FCRA for "any actual

damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1000," plus "such amount of punitive damages as the court may allow" and "reasonable attorney's fees as determined by the court." 15 U.S.C. § 1681n(a). Since Plaintiff is alleging a willful violation of the FCRA, Chase's reliance on *Smith v. LexisNexis*, 2013 WL 2251771, at *3 (N.D. Ill. May 22, 2013), a case involving an alleged negligent violation of section 1681b, is misplaced. Negligent violations of the FCRA are governed by 15 U.S.C. § 1681o(a)(1), which provides for an award of actual damages but not statutory or punitive damages.

Finally, the Court concludes that Plaintiff's allegations as to Chase's willfulness are sufficient to survive a motion to dismiss. Chase asserts that "Plaintiff fails to allege any facts regarding Chase's state of mind when Chase allegedly accessed Plaintiff's credit report in September 2014." [84] at 9. But in fact, Plaintiff alleges that Chase knew at the time it accessed the report that the debt was not collectible because it had been discharged in bankruptcy, but nonetheless invaded Plaintiff's privacy by illegally accessing his credit file. [63] at 17.

### 2. Violation of the Discharge Injunction (Count VII)

The Court grants Chase's motion to dismiss Count VII for the same reasons it grants Seterus' motion to dismiss Count IX, as explained above.

### 3. Violation of the Automatic Stay (Count VIII)

Plaintiff alleges that Chase violated the Bankruptcy Code's automatic stay provision, 11 U.S.C. § 362(k)(1), by willfully attempting to collect on the Mortgage Loan on July 16, 2014, when it had actual notice of Plaintiff's bankruptcy and the uncollectable status of his debt. Chase argues that Count VIII should be dismissed for lack of jurisdiction because the bankruptcy court has exclusive jurisdiction to determine whether there has been a violation of the automatic

stay. Plaintiff "concedes that this district is one that refers bankruptcy matters to bankruptcy judges for our district," but argues that the Court may withdraw any case that has been referred to the bankruptcy court, on any party's or its own motion. [93] at 7.

The Court declines to exercise jurisdiction over Plaintiff's claim for violation of the automatic stay. Plaintiff has not, to date, filed a motion to withdraw the reference to the bankruptcy court. The only on-point in-circuit case cited by either party, *In re Benalcazar*, 283 B.R. 514, 522 (Bankr. N.D. Ill. 2002), explains that "it is generally accepted that only the bankruptcy court has authority to punish parties for violating the automatic stay." Therefore, the Court declines to proceed on its own motion to withdraw the reference in part or in full. This decision is without prejudice to Plaintiff's right to file a motion to withdraw the reference, at which time the parties would be allowed the opportunity to more fully brief the issue for the Court. Since the Court concludes that it does not currently have jurisdiction over Plaintiff's claim for violation of the automatic stay, the Court will not reach at this time Chase's arguments for dismissal of Count VIII under Rule 12(b)(6).

### 4. Violation of the ICFA (Count XII)

Plaintiff alleges that Chase violated the ICFA by demanding payment on the Mortgage Loan during the bankruptcy automatic stay, when it had actual knowledge of Plaintiff's bankruptcy discharge, in an attempt to collect a debt that was not collectable at the time the demand was made. Chase moves to dismiss Plaintiff's ICFA claim on the bases that (1) it does not allege the required elements of an ICFA claim; and (2) the only damages Plaintiff alleges are vague emotional distress damages and attorneys' fees and costs, which do not constitute actual damages under ICFA.

The Court finds it unnecessary to consider Chase's first argument, because its second

argument is dispositive, for the same reasons explained above in the portion of the opinion dismissing Count XIII of Plaintiff's complaint, against Seterus.

## IV.     Conclusion

For the reasons stated above, Defendants' motions to dismiss are granted in part and denied in part.  Specifically, the Court grants Seterus' motion [72] to dismiss Counts IX and XIII, for violation of the discharge injunction and the ICFA, respectively, and grants in part Seterus' motion to dismiss Count II, for violation of FDCPA §§ 1692e(2), (8) & (10), and 1692f(1).  The Court grants Experian's motion [74] to dismiss Count XI, for violation of  FCRA § 1681e(b).  The Court grants Pierce's motion [82] to dismiss Count VI, for violation of the discharge injunction, and part of Count I, for violation of FDCPA § 1692c(a)(2).  The Court grants Chase's motion [83] to dismiss Counts VII, VIII, and XII, for violation of the discharge injunction, the automatic stay, and the ICFA, respectively.  The motions to dismiss are denied in all other respects and all other claims remain in the case.  Finally, Seterus' motion for an extension of time to file an answer is granted; Seterus shall have until January 24, 2017 to file its answer to Count V of Plaintiff's amended complaint.  This case is set for further status hearing on January 26, 2017 at 9:00 a.m.

Dated: January 3, 2017

_____
Robert M. Dow, Jr.
United States District Judge